UNITED STATES DISTRICT COURT    MAY 1 5 2002
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. SALLY A. REAGAN, | § § § | |
| Plaintiff, | § § § | |
| vs. | § § | Civil Action No. H-97-3310 |
| EAST TEXAS MEDICAL CENTER REGIONAL HEALTHCARE SYSTEM, EAST TEXAS MEDICAL CENTER REGIONAL HEALTH FACILITIES, EAST TEXAS MEDICAL CENTER, UNIVERSITY PARK HOSPITAL, BLUE CROSS AND BLUE SHIELD OF TEXAS, INC., | § § § § § § § § § § | JURY TRIAL |
| Defendants. | § § | |

## EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Respectfully submitted,

WINSTEAD SECHREST & MINICK P.C. (of counsel)
5400 Renaissance Tower
1201 Elm Street
Dallas, Texas  75270-2199
214/745-5400
214/745-5390 (Fax)

By: *Bruce Bowman* By Permission *JMif*

Bruce W. Bowman, Jr.    SB#02752000
Southern District Bar No. 22615
Attorney in Charge
John P. Kincade (of counsel) SB#11429600
Christopher Carr (of counsel) SB#00790430

ATTORNEYS FOR DEFENDANTS EAST TEXAS MEDICAL CENTER REGIONAL HEALTHCARE SYSTEM, EAST TEXAS MEDICAL CENTER REGIONAL HEALTH FACILITIES, AND EAST TEXAS MEDICAL CENTER

#141

## TABLE OF CONTENTS

Page

I.    NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . . . . . . . . . . . .  2

II.   STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

III.  STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

IV. SUMMARY OF ARGUMENT AND GROUNDS FOR RELIEF . . . . . . . . . . . . . . .  3

V.    SUMMARY JUDGMENT EVIDENCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

VI. ALL OF REAGAN'S CLAIMS ARE BARRED BY RES JUDICATA . . . . . . . . . . . .  5

      A.    Reagan's Medicare Fraud Theories Are Barred by Res Judicata . . . . . .  6
      B.    Reagan's Attempts to Hold ETMC Derivatively Liable for UPH's
            Acts Are Also Barred by *Res Judicata* . . . . . . . . . . . . . . . . . . . . . . . . 11

VII. REAGAN'S CLAIMS ARE BARRED BY LIMITATIONS . . . . . . . . . . . . . . . . . . . 12

      A.    Reagan's Claims Involving Alleged CON Fraud and Construction
            Costs Were Brought Approximately Four Years Too Late . . . . . . . . . . 13
      B.    Reagan's Remaining Claims Are Barred by Limitations . . . . . . . . . . . 15

VIII. THERE IS NO EVIDENCE OF THE "FRAUD" OR "FALSE CLAIMS"
      OF WHICH REAGAN COMPLAINS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

      A.    Neither UPH Nor ETMC Committed Medicare Fraud . . . . . . . . . . . . . 16
      B.    Reagan's Allegations of "Reverse Claim" Liability Fail as a
            Matter of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

IX. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendants East Texas Medical Center Regional Healthcare System, East Texas Medical Center Regional Health Facilities, and East Texas Medical Center (collectively, the "East Texas Defendants"), without waiving their pending objection and motion to transfer venue, move the Court pursuant to Federal Rule of Civil Procedure 56 to grant summary judgment on all claims and causes of action asserted by Relator Sally A. Reagan ("Reagan") in her Second Amended Complaint against the East Texas Defendants.

I.

## NATURE AND STAGE OF THE PROCEEDING

1.      This is a *qui tam* lawsuit filed by Relator Reagan against her former employer, the East Texas Defendants, and Blue Cross and Blue Shield of Texas, Inc. ("Blue Cross and Blue Shield").      The case is set on the jury trial docket of this Court.

II.

## STATEMENT OF ISSUES

1.      Are Reagan's claims barred by *res judicata*?

2.      Are Reagan's claims barred by applicable statutes of limitation?

3.      Is there any competent evidence of fraud, illegal acts, false claims, or damages resulting therefrom, and is Reagan's allegation of "reverse claims" appropriate?

III.

## STANDARD OF REVIEW

2.      A district court's grant of summary judgment is reviewed *de novo*.[1]

_____

[1] *Hopper v. Frank,* 16 F.3d 92, 96 (5th Cir. 1994).

EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - Page 2

## IV.

## SUMMARY OF ARGUMENT AND GROUNDS FOR RELIEF

3.     Reagan, the former CEO of University Park Hospital ("UPH") in Tyler, Texas,
lost her job because of disputes which developed between Reagan and UPH's Board of
Directors in May 1992.  Soon thereafter, Reagan sued UPH, Mother Frances Hospital
("MFH"), East Texas Medical Center ("ETMC") and two other individuals alleging that her
employment-at-will had been wrongfully and illegally terminated because she refused to
remain quiet about her perception that UPH was engaged in Medicare fraud (the
"Employment Discrimination Case").  She alleged  that ETMC, one of the East Texas
Defendants in this case, was vicariously liable for UPH's acts and omissions.  Reagan lost
the Employment Discrimination Case on summary judgment, and the finding of the trial
court was upheld on appeal.  All of Reagan's current allegations of wrongful or illegal
conduct regarding Medicare were raised by Reagan in that case, and the Court found that
there was no evidence of illegal activity.  Further, the Court ruled that ETMC had no
derivative liability for UPH's acts.

4.     On September 29, 1997, Reagan again sued ETMC and the other two East
Texas Defendants, along with UPH and Blue Cross and Blue Shield, Medicare/Medicaid's
fiscal intermediary, in a *qui tam* lawsuit alleging *the exact same claims of Medicare fraud
and derivative liability* against the East Texas Defendants and UPH.  As a result, her claims
in this case against the East Texas Defendants are barred by *res judicata* or collateral
estoppel.

5.     Plaintiff's claims in this case violate the Statute of Limitations contained in the
False Claims Act ("FCA").  Reagan's claims regarding alleged false testimony given in
1982-1983 by the East Texas Defendants to secure a Certificate of Need ("CON"), and her

EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - Page 3

allegations that the East Texas Defendants converted bond money before 1984, violate the ten year absolute Statute of Limitations contained in the FCA. The remainder of alleged acts occurred more than six years before this case was filed, and Reagan knew about them more than three years before she filed this case.

6.    Finally, after eight years of litigation, Reagan has yet to provide any proof of Medicare fraud, or that a violation of Medicare rules and regulations has occurred. To the contrary, all disputes between Blue Cross and Blue Shield, Medicare's fiscal intermediary, were settled by agreement between those parties. Full disclosure of all disputed items was made at all times by UPH. Medicare/Medicaid, the party which Reagan seeks to champion in this case, determined that the Blue Cross and Blue Shield audit was well-documented, thorough, and that no further investigation was necessary. Reagan's case therefore fails on its very factual underpinnings.

7.    This case is ripe for summary judgment, and the evidence before this Court demands that it be granted.

## V.

## SUMMARY JUDGMENT EVIDENCE

8.    The East Texas Defendants incorporate as if fully set forth herein the "Summary of the Evidence" section of the East Texas Defendants' Motion to Dismiss, and all evidence contained in the evidentiary appendix filed concurrently with this Motion.

## VI.

## ALL OF REAGAN'S CLAIMS ARE BARRED BY RES JUDICATA

9.      Reagan's direct Medicare fraud (FCA) and vicarious liability theories are barred by *res judicata* or claim preclusion as a result of the judgment against Reagan in the Employment Discrimination Case. In determining the *res judicata* effect of a Texas judgment, federal courts are required to give the judgment the preclusive effect it would be given under Texas law.[2] The three elements of *res judicata* under Texas law are:

(1)     a prior final judgment on the merits by a court of competent jurisdiction;

(2)     identity of parties or those in privity with them; and

(3)     a second action based on the same claims as were raised or could have been raised in the first action.[3]

The Fifth Circuit has recognized that "under current Texas law, any cause of action which arises out of the facts involved in litigation must be asserted to avoid the risk of being barred from litigation in a subsequent suit."[4]  If the plaintiff, through the exercise of diligence, could have litigated the second suit's claims in the first suit, the second suit's claims will be barred.[5]  By these principles, Reagan's attempt to raise the same theories in this case is barred:  every claim she makes regarding Medicare fraud and related allegations was, or could have been, litigated in the Employment Discrimination Case.

---

[2]  *Ellis v. Amex Life Ins. Co.*, 211 F.3d 935, 937 (5th Cir. 2000).

[3]  *Amstadt v. U. S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

[4]  *Matter of Troy Dodson Constr. Co., Inc.*, 993 F.2d 1211, 1214 (5th Cir. 1993).

[5]  *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex. 1992).

A.    **Reagan's Medicare Fraud Theories Are Barred by Res Judicata**

9.    In the Employment Discrimination Case, ETMC, one of the East Texas Defendants, obtained a summary judgment on all of Reagan's claims against it.[6]  Reagan alleged then that ETMC was liable for UPH's  commission of Medicare fraud with regard to the reporting of lease payments, construction costs, and a variety of other matters.

10.    For instance, in Plaintiff's First Amended Original Petition in the Employment Discrimination Case, Reagan alleges that MFH and ETMC misappropriated UPH construction funds in the amount of approximately $2 million which had been generated through county revenue bonds,[7] overstated capital expenditures in annual Medicare costs reports and in applications to Medicare requesting exemptions for "new provider status,"[8] and that the lease payments at issue in this *qui tam* case were improper because they were exchanged between "related organizations."[9]  Reagan referred to the foregoing acts as "illegal unethical conduct," and cited a variety of statutes, many of which she again cites in this case, as having been violated.[10]  Reagan also alleged that MFH and ETMC were part of a joint venture/partnership which owned UPH.[11]

11.    Reagan, in her deposition in the Employment Discrimination Case, complained about the exact same issues of which she complains in this case:

---

[6]  *See* Exhibit "E," pg. 4.

[7]  Exhibit A, pg. 2 ¶ 7.

[8]  Exhibit "A," pg. 2, ¶ 7.

[9]  Exhibit "A," pg. 2-3, ¶ 8.

[10]  Exhibit "A," pg. 4, ¶ 12.

[11]  Exhibit "A," pg. 1, ¶ 7.

EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - Page 6

(a)    the lease payment was too high, and constituted Medicare fraud;[12]

(b)    ETMC could not account for $2 million related to the UPH construction;[13]

(c)    capital costs were misreported to Medicare;[14]

(d)    high maintenance and groundskeeping costs from ETMC to UPH;[15]

(e)    sale of a faulty pickup truck by ETMC to UPH.[16]

12.    In her deposition in the Employment Discrimination Case, Reagan mentioned that she sent a lawyer a fifteen-page summary containing "historical information" regarding the hospital which contained information about the "certificate of need."[17] Finally, Reagan believed in the Employment Discrimination Case that she had been terminated for her refusal to look the other way with regard to the illegal acts that she alleged.[18]

13.    After her deposition in the Employment Discrimination Case, Reagan's claims became more detailed regarding Medicare fraud, construction costs, illegal reporting, and other alleged allegations against UPH and ETMC.  Reagan went so far in the Employment Discrimination Case as to designate witnesses to testify regarding:

> Medicare reporting, Medicare reporting requirements, failure by the provider to comply with Medicare requirements, Medicare audits of University Park Hospital and audit findings, intermediary determination that Defendants are related entities, disallowing portions of lease payments, reporting capital costs on Medicare cost reports, issues of related organizations, Medicare

---

[12]  Exhibit "C," Reagan depo., Vol. III, pg. 110:9-114:13.

[13]  Exhibit "C," Reagan depo., Vol. III, pg. 208:5-210:4.

[14]  Exhibit "C," Reagan depo., Vol. III, pg. 112:8-113:11.

[15]  Exhibit "C," Reagan depo., Vol. IV, pg. 97:25-98:20.

[16]  Exhibit "C," Reagan depo., Vol. IV, pg. 101:14-102:20.

[17]  Exhibit "C," Reagan depo., Vol. II, pg. 93:13-23.

[18]  Exhibit "C," Reagan depo., Vol. III, pg. 109:4-16.

fraud and abuse, the procedure for reporting capital expenditures and other costs of the health care provider and cost reports filed with Medicare, the effect of overstating capital expenditures and cost reports filed by the health care provider to Medicare, violations of Medicare principles by the health care provider, the penalties provided by federal authorities for intentionally misrepresenting or falsifying any information contained in the cost reports certified by an officer or administrator of the health care provider, and capital costs components as reported by the provider to Medicare.[19]

14.     In the Employment Discrimination Case, Reagan identified witnesses to testify that UPH's book value was too high, and that millions of dollars of bond funds were dispensed without proper records.[20] In addition, Reagan testified at length regarding all of the foregoing issues, and Certificate of Need issues, in the Employment Discrimination Case.[21] During twenty pages of deposition questioning[22] regarding the Certificate of Need application and testimonial hearing, her attorney in the Employment Discrimination Case referenced her allegations which underlie this case.[23]

15.     In the Employment Discrimination Case, Reagan executed an affidavit which, though replete with blatant hearsay, speculation, and unsupported conclusions, contained pages of allegations of Medicare fraud and abuse identical to those pled in this case.[24] This affidavit was drafted in response to UPH's Motion for Summary Judgment wherein the issue of the legality and propriety of UPH's acts regarding Medicare cost reporting, the

---

[19]  Exhibit "B," pp. 7-9.

[20]  Exhibit "B," p. 9.

[21]  Exhibit "B," pp. 14-17.

[22]  Exhibit "D," pp. 20-40.

[23]  Exhibit "D," p. 39:14-40:2.

[24]  Exhibit "K," in full.

lease, and all other issues of fraud raised by Reagan were briefed in full.[25] After considering all evidence, the trial court in the Employment Discrimination Case granted UPH's, and ETMC's, Motions for Summary Judgment. The appellate court, affirming the trial court's grant of a final judgment, noted that there was **"no evidence that UPH conducted itself in an illegal manner in relation to Medicare..."**[26]

16.    In her *qui tam* case, Reagan again complains about all of the foregoing issues. A review of Reagan's Second Amended Complaint shows that most of her allegations are nearly identical as the above allegations made in the Employment Discrimination Case.[27] Her interrogatory responses in this *qui tam* case also mirror the complaints that she made in the Employment Discrimination Case.[28] Her deposition testimony in this case establishes that the claims she brings here involve the same alleged fraud that she failed to prove in the Employment Discrimination Case.[29]

17.    The first element of *res judicata*, a final judgment on the merits, is present here. In Reagan's previous lawsuit against East Texas Medical Center (ETMC), UPH and others, ETMC obtained a final, summary judgment on all of her claims against it.[30]

---

[25]  Exhibit "L," pp. 9-22.

[26]  Exhibit "E," pg. 8.

[27]  Exhibit "F."

[28]  Exhibit "G," pp. 2-40; Exhibit "H," pp. 5-60.

[29]  Exhibit "O," pp. 25-27.

[30]  Exhibit "E," pg. 4.

Regarding Reagan's claim of Medicare fraud, the appellate court found ". . . **no evidence that UPH conducted itself in an illegal manner in relation to Medicare**. . . ."[31]

18.    The second element of *res judicata*, privity, is present here.  Reagan brought both lawsuits against ETMC, a current defendant and affiliate of the two other East Texas Defendants.  Although the present suit purports to be brought pursuant to the FCA *qui tam* provisions by Reagan on behalf of herself and the United States, privity exists between the *qui tam* Reagan and the government for *res judicata* purposes.[32]

19.    The third element of *res judicata*, a second action based on the same claims as were raised or could have been raised in the first action, is also present here.  As fully explained above, the subject matter of the Employment Discrimination Case was the same as this FCA *qui tam* action.[33]

20.    Reagan's testimony before this Court in this *qui tam* case may be the best evidence that she seeks to relitigate the Employment Discrimination Case due to her unhappiness with the outcome, and her perception that the trial court in Tyler seemingly joined in the conspiracy against her:

> Recitfication [sic] of long-standing fraud, perpetrated by these prominent, influential Tyler defendants in this case, is very unlikely to occur if venue is moved to Tyler.  With history as indicator, defendants [sic] to obfuscate the truth, and hide from the consequences of their felonious actions against their own community, and all taxpayers and Medire [sic] participants.
>
> Examination of the record of the related (wrongful termination) case in state court reveals that my related case has suffered from lack of fair hearing.

---

[31]    Exhibit "E," pg. 8 (writing with respect to Reagan's wrongful termination claim – that she was fired because "she refused to conceal criminal activities from Medicare.") (emphasis added).

[32]    *In re Schimmels*, 127 F.3d 875, 881-82 (9th Cir. 1997).

[33]    Exhibit "E," pp. 2-3.

EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - Page 10

This is evidenced by rulings in conflict with statutes and/or precedent cases, and now on appeal as a result, and minimal progress toward trial after five and a half years, with rulings now still pending (after more than a year) that will further delay trial. Such delays have denied me access to anyting [sic] resembling speeding access to trial and/or justice.

With the above considerations in mind, I request the Court to deny defendants' request for a change of venue, so that I may have a fair and neutral venue, in which no party to this case has prejudicial relationships with the Court from which it may benefit. Without such neutral venue, the halls of justice will cringe in pain and discouragement with respect to a miscarriage of justice that could have been easily avoided by maintaining current venue.[34]

21.     In the Employment Discrimination Case, Reagan was required to prove that she had been terminated for refusing to engage in an illegal or wrongful act.[35] Despite her best efforts to prove that illegal or wrongful acts occurred at UPH in the form of Medicare fraud as alleged exactly in this case, she failed.[36] The doctrine of *res judicata* prevents her from suing the East Texas Defendants again based on the same allegations in this case.

## B.   Reagan's Attempts to Hold ETMC Derivatively Liable for UPH's Acts Are Also Barred by *Res Judicata*

22.     In the Employment Discrimination Case, Reagan tried to hold ETMC jointly and severally liable for alleged misconduct of UPH on the theory that UPH was a "joint venture" between East Texas and Mother Francis Hospital.[37] The Tyler Court of Appeals ruled that based on UPH's status as a Texas nonprofit corporation, UPH could not be a

---

[34]  Exhibit "M," p. 7, ¶ 1-3.

[35]  *Sabine Pilot Svc., Inc. V. Hauch*, 687 S.W.2d 733, 735 (Tex. 1985).

[36]  Exhibit "E," pg. 8.  (Twelfth Court of Appeals holds there is "no evidence to support Reagan's allegations of illegal activities or bad acts....")

[37]  Exhibit "E," pp. at 5-7.

EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - Page 11

joint venture of ETMC and another defendant.[38] Though the issue of whether ETMC was responsible for UPH's alleged conduct was "of an overarching nature,"[39] Reagan did not raise her present vicarious liability theories against ETMC in the other case. With reasonable diligence, she could have done so. The merger which she now claims imposes liability upon the East Texas Defendants for UPH's acts occurred on September 24, 1994.[40] Summary judgment in the Employment Discrimination Case was not granted until September 3, 1997.[41]

23.     Here, again, the three elements of *res judicata* are established: a prior final judgment on the merits, privity, and claims arising out of the same subject matter that could have been litigated in the prior suit. Summary judgment is proper regarding Reagan's "piercing the veil" allegations.

## VII.

## REAGAN'S CLAIMS ARE BARRED BY LIMITATIONS

24.     The FCA provides that a civil action under it may not be brought:

(1)     More than six (6) years after the date on which the violation of Section 3729 is committed; or

(2)     More than three (3) years after the day when facts material to the right of action are known or reasonably should have been known by the official of the United States charged with the responsibility to act in the circumstances, but in no event more than ten (10) years after the date on which the violation is committed;

---

[38]  Exhibit "E," p. 6.

[39]  Exhibit "E," p. 5.

[40]  Exhibit "F," p. 8, ¶ 26.

[41]  Exhibit "E," p. 4.

EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - Page 12

(3)    Whichever occurs last.[42]

25.    The date when the "violation is committed" begins on the date that the claim for payment is presented to the government.[43]  Where, as here, an action is originally brought by a *qui tam* relator but the government decides not to intervene, the three-year statute of limitation extension begins from the date the *qui tam* relator knows or should have known of the fraud.[44]  In such cases, the *qui tam* plaintiff (Reagan) is considered to be "an official of the United States charged with the responsibility to act."[45]  Otherwise, a *qui tam* plaintiff could deliberately withhold filing until the maximum ten-year limit.[46]

26.    Reagan's claims involving the CON are clearly barred by the ten-year absolute statute of limitations in the FCA, and her remaining claims are barred because they were brought in this case more than six years after the alleged "violation," and more than three years after Reagan learned of them.

## A.    Reagan's Claims Involving Alleged CON Fraud and Construction Costs Were Brought Approximately Four Years Too Late

26.    Reagan alleges that ETMC defrauded the government by lying to the Texas Health Care Facilities Commission ("THFC") to obtain the issuance of a CON for the bond issuance regarding and construction of UPH.  She alleges that:

––––––––––––––––––

[42]  31 U.S.C. § 3731(b).

[43]  *Smith v. United States*, 287 F.2d 299, 304 (5th Cir. 1961).

[44]  *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1218 (9th Cir. 1996), vacated on other grounds, 521 U.S. 1101, 117 S.Ct. 2476, 138 L.Ed. 986 (1997), opinion withdrawn in part, reinstated in part by *Hyatt v. Northrop Corp.*, 137 F.3d 1179 (9th Cir. 1998).

[45]  *Id.*

[46]  *Id.*

EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - Page 13

(a)    authorization to build UPH was provided to East Texas by the THFC which issued a CON in January 1983.[47]

(b)    East Texas obtained construction financing for UPH through a 1984 municipal bond issued in the amount of $5.6 million, though it was only authorized to issue $3.7 million in bonds, with the remainder to be made up with a $2 million cash contribution by East Texas which was never made.[48]

(c)    East Texas executives represented that no profit was to be made on the lease, and that East Texas would make a $2 million equity contribution to the $5.6 million UPH project. The testimony was false.[49]

(d)    East Texas made additional misrepresentation regarding cost savings through shared services.[50]

27.    The testimony at issue was given no later than 1984.[51] Construction was completed before 1984; therefore, alleged misappropriation of funds or the "buyout" of the competitor must have occurred by then.[52] Reagan did not file this case until September 29, 1997.

28.    Though East Texas Defendants deny that false testimony was given or fraud committed, the Original Complaint was filed approximately fourteen years after the allegedly false testimony was given and fraud allegedly committed. This violates the ten-year absolute limitation contained in the FCA. All claims regarding the CON and construction costs are time-barred.

---

[47]  Exhibit "F," p. 3, ¶ 14.

[48]  Exhibit "F," p. 4, ¶ 14.

[49]  Exhibit "F," p. 4, ¶ 15.

[50]  Exhibit "F," p. 4, ¶ 16.

[51]  Exhibit "J," p. 2, ¶ 3.

[52]  Exhibit "O," p. 28, 43.

### B.   Reagan's Remaining Claims Are Barred by Limitations

29.   FCA suits must be brought not more than six years after the date on which the alleged violation is committed, or not more than three years after the Relator knows or should know of facts material to the right of action.[53]  Reagan was terminated from UPH in or around April 30, 1992.[54]  Reagan was aware of facts which allegedly support her claims here at the time she was terminated as detailed above, and as evidenced by her view that her refusal to look the other way regarding the lease, missing construction money, Medicare fraud and irregularities resulted in her termination.[55]

30.   Reagan filed her *qui tam* suit under seal on September 29, 1997, after the six-year statute of limitations ran on most or all claims.  Alleged violations occurring before September 29, 1991 (six years before the suit was filed) are barred.  A review of the Second Amended Complaint shows that the bulk — if not all — of the alleged FCA violations occurred *before* September 29, 1991.  The table of allegedly false cost reports in the Second Amended Complaint shows that all reports were filed before September 29, 1991, with the exception of the 1991 report filed 3/30/92 and the 1992 through 1994 reports.[56]  All claims alleged in Paragraphs 14-16 and 23-34 are barred by limitations, and

---

[53]  31 U.S.C. § 3731(b)(1)(West 1992); *see United States ex rel. Hyatt*, 91 F.3d at 1218.

[54]  Exhibit "A," p. 3, ¶ 10.

[55]  *See* Exhibit "A," pp. 2-3.

[56]  *See also Stinson, Lyons, Gurlin & Bustamante, T.A. v. Prudential Ins. Co.*, 944 F.2d 1149, 1157-58 (3rd Cir. 1991) (where information is discovered in discovery of a lawsuit by a party who is not under any court-imposed prohibition against its use, it is publicly disclosed).

EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - Page 15

should be dismissed with all other claims which regard activity which allegedly took place before September 29, 1991.

## VIII.

### THERE IS NO EVIDENCE OF THE "FRAUD" OR "FALSE CLAIMS" OF WHICH REAGAN COMPLAINS

#### A.    Neither UPH Nor ETMC Committed Medicare Fraud

31.    Reagan's claims for violation of the FCA, 31 U.S.C. 3729(a)(1)-(3) all require fraudulent claims.  A "claim" is "any request or demand, whether under a contract or otherwise, for money or property which is made to a contractor, grantee, or other recipient if the United States government provides any portion of the money or property which is requested or demanded, or if the government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded."[57] A "claim" includes any fraudulent attempt to cause the government to pay money.[58]

32.    The terms "knowing" and "knowingly" mean that a person, with respect to information:

(a)    has actual knowledge of the information;

(b)    acts in deliberate ignorance of the truth or falsity of the information; or

(c)    acts in reckless disregard of the truth or falsity of the information.[59]

---

[57]  31 U.S.C. § 3729(c).

[58]  *United States v. Neifert-White Co.*, 390 U.S. 228, 283 (1968).

[59]  31 U.S.C. § 3729(b).

EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - Page 16

33.    "False" and "fraudulent" are not defined in the FCA.  Mere calculation or reasoning errors are not "false."[60]  Mere negligence is not actionable.[61]  To impose liability, defendant must have lied.[62]

34.    Reagan is not an expert regarding Medicare fraud,[63] and had never dealt directly with Medicare prior to her UPH tenure.[64]  Reagan has never done a calculation tracking damage to the Government based on the alleged CON fraud and inflated construction costs, and is not a damages expert.[65]  Reagan admits that at least with respect to the lease payment issue, that the information regarding the existence and amount of the monthly lease payment was accurately reported to Medicare.[66]  This case does not involve false reporting of facts, but rather the dispute of how to characterize the relationship of UPH and ETMC.[67]

35.    Contrary to Reagan's claims, Elmer Ellis, one of the individuals alleged to have falsely sworn to the THCF, did not lie.[68]  Further, the East Texas Defendants' expert, Ronald L. Campbell, a CPA whose thirty-year career includes working for Blue Cross of

_____

[60]  *United States ex rel. Lamers v. City of Green Bay*, 168 F.3d 1013, 1018 (7th Cir. 1999).

[61]  *U.S. ex rel. Reuter v. Sparks*, 939 F.Supp. 636 *aff'd* 111 F.3d 133 (1996).

[62]  *Wang ex rel. United States v. FMC Corp.*, 975 F.2d 1412, 1420 (9th Cir. 1992).

[63]  Exhibit "O," p. 40.

[64]  Exhibit "O," p. 158.

[65]  Exhibit "O," p. 68.

[66]  Exhibit "C," Reagan depo., Vol. I, p. 172:2-173:3.

[67]  Exhibit "O," pp. 97-98.

[68]  Exhibit "J," p. 2, ¶ 3.

Texas, Inc. as fiscal intermediary for the Medicare program, and with a myriad of hospitals and health care providers regarding the submission, management, and auditing of Medicare claims,[69] was involved in the cost reporting issues for UPH, and has reviewed pertinent information regarding this case.[70] Campbell concludes the following:

(a) There is no evidence that the preparation of UPH's Medicare cost reports violated Medicare rules and regulations;

(b) There is no evidence that any of the East Texas Defendants committed fraud, or made false claims for reimbursement; and

(c) Medicare's intermediary, Blue Cross & Blue Shield, handled the "legitimate difference of opinion on how complex items should be handled," and settled them with all money due paid to the Medicare program through the fiscal intermediary.[71]

Campbell's review of this file is extensive, and the basis for his opinions sound.[72] A succinct summary of the fact that Medicare audited UPH and dealt with the issues raised by Reagan was presented in the Employment Discrimination Case.[73]

36.     Further, a determination by HCFA, the U.S. government's Medicare/Medicaid agency, supports Campbell's opinion. In a letter to Kay Bailey Hutchison, the HCFA confirmed that based on Reagan's allegations, it visited Blue Cross & Blue Shield of Texas and found that Blue Cross & Blue Shield of Texas' audit work papers were "well-documented," and that Blue Cross & Blue Shield had performed an "extraordinarily

---

[69]  See Exhibit "I," pp. 1-15.

[70]  Here, Mr. Campbell has personal knowledge of this case through his service as a Medicare consultant to UPH, and his participation in the PRRB matters at issue in this case.

[71]  Exhibit "I," p. 6, ¶ 19.

[72]  Exhibit "I," pp. 5-16.

[73]  Exhibit "P," pp. 161-177.

thorough audit" warranting no further investigation.[74]  Medicare, which Reagan seeks to champion in this case, admits there is no fraud.

37.  Even though all entities and/or individuals who have reviewed this matter in detail have determined that there is neither smoke nor fire to Reagan's claims,  Reagan again sued the East Texas Defendants in this case.  Her allegations lack substance, and judgment should be rendered against them.  Reagan never proves fraud, or explains how the government or Medicare has been damaged, regardless of whether UPH was charged above market rates for the lease, laboratory services and maintenance services, bought a faulty truck from ETMC, or suffered any of the other myriad of complaints raised by Reagan.  Summary judgment is therefore proper.

## B.  Reagan's Allegations of "Reverse Claim" Liability Fail as a Matter of Law

38.  Reagan contends that the East Texas Defendants made false statements in order to avoid reimbursing the government for earlier false claims in violation of 31 U.S.C. § 3729(a)(7). A claim under 31 U.S.C. § 3729(a)(7) requires factual allegations (and proof) of the following elements: "(1) the defendant made, used, or caused to be used a record or statement to conceal, avoid, or decrease an obligation to the United States; (2) the statement or record was false; (3) the defendant knew that the statement or record was false; and (4) the United States suffered damages as a result."[75]  The reverse false claim action requires factual allegations of a pre-existing obligation to pay money to the

---

[74]  Exhibit "I," Exhibit 34.

[75]  *United States ex rel. Wilkins v. Ohio*, 885 F.Supp. 1055, 1059 (S.D. Ohio 1995).

EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - Page 19

Government that is sought to be avoided.[76] It is "something more than potential liability or moral or social duty; a legal obligation seems to be the touchstone."[77] Absent this legal obligation, there can be no violation of §3729(a)(7) and, hence, no claim or jurisdiction.

39.    The penalties of the FCA are triggered only if the defendant already owes a specific, legal duty to the Government, and the defendant seeks to avoid or decrease that existing duty by knowingly making a false statement or record.[78] Therefore, although an allegation may support a claim for fraud, a reverse claim will not lie without a duty to pay.[79]

40.    Reagan has not pointed to any regulation or statute of the United States that imposes any current or existing obligation upon the East Texas Defendants to the United States.  Instead, Reagan accuses the East Texas Defendants of submitting factually incorrect reports to various governmental agencies in order to obtain money from the government to which they were not entitled.

41.    Because Reagan has never shown that the East Texas Defendants had an existing obligation to the United States government which they sought to avoid or decrease by fraud, her "reverse claims" fail as a matter of law.

---

[76] *U.S. v. Q International Courier, Inc.*, 131 F.3d 770, 773 (8th Cir. 1997) (emphasis added); *United States ex rel. S. Prawer & Co. v. Verrill & Dana*, 946 F.Supp. 87, 93-94 (D. Me. 1996).

[77] *Prawer*, 946 F. Supp. At 93-94.

[78] *Id.* at 774.

[79] *Id.* at 773.

## IX.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the East Texas Defendants pray that this Court will grant the Motion for Summary Judgment, enter Final Judgment against Reagan on all of her claims and causes of action against them, and tax court costs against Reagan.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this document was forwarded via certified mail on this ___15th___ day of May, 2002:

John R. Craddock
Barnett & Craddock
440 Louisiana, Suite 1400
Houston, Texas  77002

and that a true and correct copy of this document was forwarded via first-class, U.S. Mail on this 15th day of May, 2002 to:

George Vitelli
U.S. Justice Department
601 D. Street, N.W.
Washington, D.C.  20004

Robert M. Roller                           Jill O. Venezla
Roller and Allensworth, L.L.P.             U. S. Attorney's Office
15115 Kohlmeyer Drive                      Suite 1500, 910 Travis
Austin, Texas  78734                       Houston, Texas  77208-1129


_Bruce Bowman By Permission_ _____

Bruce W. Bowman, Jr.

East Tx Defs' MSJ WPD
345:20972-1

EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - Page 22

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br>EX REL. SALLY A. REAGAN, | § <br> § <br> § | |
| Plaintiff, | § <br> § | CIVIL ACTION NUMBER |
| v. | § <br> § | H-97-3310 |
| EAST TEXAS MEDICAL CENTER<br>REGIONAL HEALTHCARE SYSTEM,<br>EAST TEXAS MEDICAL CENTER<br>REGIONAL HEALTH FACILITIES,<br>EAST TEXAS MEDICAL CENTER,<br>UNIVERSITY PARK HOSPITAL, AND<br>BLUE CROSS AND BLUE SHIELD OF<br>TEXAS, INC., | § <br> § <br> § <br> § <br> § <br> § <br> § <br> § <br> § | JURY TRIAL |
| Defendants. | § | |

## ORDER ON EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW

This Court has considered the Motion for Summary Judgment of Defendants East Texas Medical Center Regional Healthcare System, East Texas Medical Center Regional Health Facilities, and East Texas Medical Center (the "Motion") and the response of Plaintiff United States of America, ex rel. Sally A. Reagan (the "Response"). This Court, having considered the Motion, the Response, and all documents and evidence on file, finds that the Motion is well taken and should be granted.

## I. FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.    Relator Sally A. Reagan ("Reagan") lost her job as CEO of University Park Hospital ("UPH") in May 1992 because of disputes which developed between Reagan and UPH's Board of Directors. Soon thereafter, Reagan sued UPH, Mother Frances Hospital ("MFH"), East Texas Medical Center ("ETMC") and two other individuals alleging, in part, that her

employment-at-will had been wrongfully and illegally terminated because she refused to commit illegal acts. The illegal acts at issue in the employment discrimination case, according to Reagan, were the submission of Cost Reports to Medicare which Reagan alleged were fraudulent, and financial irregularities regarding construction costs, lease payments, and ancillary services which Reagan claimed were fraudulently being passed by ETMC through UPH to Medicare. Further, Reagan alleged in her employment discrimination case that ETMC was vicariously liable for UPH's acts and omissions due to joint venture and control theories. Reagan lost her employment discrimination case against ETMC and UPH on summary judgment, and the trial court found, as affirmed by the appellate court, that there was no evidence of illegal activity. Further, the court ruled that ETMC had no derivative liability for UPH's acts, both because there was no illegal activity, and because there was no evidence of illegal acts.

2.  On September 29, 1997, Reagan again sued ETMC and two of its affiliates, East Texas Medical Center Regional Healthcare System, and East Texas Medical Center Regional Health Facilities (collectively, the "East Texas Defendants") as Relator in this *qui tam* lawsuit. Reagan asserts nearly the exact same claims of Medicare fraud and derivative liability against the East Texas Defendants and UPH in this case that she asserted in her employment discrimination case in state court. She also raises claims regarding testimony allegedly given by the East Texas Defendants to support the issuance of a Certificate of Need ("CON") and municipal bonds for the construction of UPH. The testimony regarding the CON at issue in this case was given by representatives of one or more of the East Texas Defendants in 1982, or early 1983. Reagan was aware of the issuance of the CON about which she complains in this case long before the end of her employment discrimination case in the state court case.

**ORDER ON EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 2

3.    No competent evidence that the East Texas Defendants, or UPH, committed fraud exists in the record. Blue Cross & Blue Shield, as Medicare's fiscal intermediary, settled all disputes with UPH as they arose years before this case was filed, and, in response to Reagan's allegations, performed a full and thorough audit of UPH to ascertain that no fraud existed. The Health Care Finance Association from the U.S. Department of Health and Human Services also investigated Reagan's claims on behalf of Medicare, and found no evidence of fraud. Finally, Ron Campbell, a qualified expert and CPA, thoroughly examined the evidence of this case and found no evidence of fraud. Elmer Ellis' testimony that neither he nor the East Texas Defendants committed fraud is clear and uncontradicted.

## A.    Res Judicata

4.    Texas law recognizes three elements to establish the doctrine of res judicata:

1.    A prior final judgment on the merits by a court of competent jurisdiction;
2.    Identity of parties or those in privity with them; and
3.    A second action based on the same claims as were raised or could have been raised in the first action.

*Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

5.    All three elements are present here. The Judgment of the state trial court in the employment discrimination case is final, and has been upheld on appeal by the Twelfth District Court of Appeals of Texas. Both the trial court and the Court of Appeals found that there was no evidence of any illegal acts by UPH. In that case, Reagan was charged with the duty to prove that her refusal to engage in illegal acts was the cause of her termination. *Sabine Pilot Svc., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). The state court found, and the appellate court affirmed, that there was no merit to Reagan's allegations, very similar to those made in this case, that UPH, and, derivatively, ETMC were guilty of Medicare fraud or "illegal acts," or that ETMC was derivately liable for UPH's acts.

**ORDER ON EAST TEXAS DEFENDANTS' MOTION FOR SUMMARY JUDGMENT INCLUDING FINDINGS OF FACT AND CONCLUSIONS OF LAW** – Page 3

6. The second element of privity is present in this case. *See, In re: Schimmels,* 127 F.3d 875, 882 (9th Cir. 1997) (privity exists between a Qui Tam relator and the government for res judicata purposes).

7. Finally, the third element of res judicata is present here. A review of Plaintiff's allegations and testimony in the employment discrimination case reviews virtually all of the exact claims of fraud that she makes against UPH and the East Texas Defendants in this case. She was aware of each and every claim of fraud, or was aware of facts which could have led her to them, in the employment discrimination case. Further, all of her claims regarding the East Texas Defendants' derivative liability for UPH's acts were, or could have been, raised in the employment discrimination case. The trial court rendered final judgment against her on those claims in the employment discrimination case, and the appellate court affirmed.

8. This Court therefore finds that all of Plaintiff's claims are barred by the doctrine of *res judicata*, and enters summary judgment against them.

## B.  Limitations

9. 31 U.S.C. § 3731(b) sets forth the Statute of Limitations for False Claims Act cases. There is an absolute ten-year Statute of Limitations which applies to all "violations" under the Act. Applying this ten-year statute, any and all of Reagan's claims which occurred before September 27, 1987, which include all claims regarding the Certificate of Need issuance, the lease negotiation between ETMC and UPH, construction costs for UPH, or financing for the construction of UPH, are barred by limitations.

10. Further, the FCA limitations provision contains a "tolling" provision which provides that a six-year Statute of Limitations applies, unless "facts material to the right of action" become "known or reasonably should have been known by the official of the United

States charged with the responsibility to act in the circumstances," in which cost limitations is three years after the United States "official" becomes aware. 31 U.S.C. § 3731(b).  A relator is entitled to the three-year tolling provision contained in the FCA.  *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 128 (9th Cir. 1996), vacated on other grounds, 521 U.S. 1101, 117 S.Ct. 2476, 138 L.Ed. 986 (1997) common opinion withdrawn in part, reinstated in part by *Hyatt v. Northrop Corp.*, 137 F.3d 1179 (9th Cir. 1998).  To hold otherwise would allow a *qui tam* relator to deliberately hold filing until the maximum ten-year limit, and bring claims unavailable to the government.

11.     Reagan knew, or should have known, of all facts necessary to bring these claims when her employment with UPH was terminated in or around May 1992, more than three years before she brought the Qui Tam case.  Alternatively, and if the six-year statute is applied, the Plaintiff's petition makes clear that all of the Cost Reports of which she both complains and has calculated damages regarding were submitted to Medicare more than six years before this lawsuit was filed.

12.     As a result, this Court finds that all of Plaintiff's claims and causes of action against the East Texas Defendants are barred by limitations.

**C.     Fraud and Illegal Acts and Claims**

13.     This Court finds no evidence of any "fraud" that any of the East Texas Defendants had any "actual knowledge" of false information, or that they acted deliberately or in reckless disregard of the truth or falsity of the information.  The Affidavit of Elmer Ellis, and the findings of Ron Campbell, are uncontradicted by competent evidence.  Without the underlying fraud, Plaintiff's claims against the East Texas Defendants fail.  There is no evidence of false acts, false

claims, or intent to defraud. Further, there is no evidence that the U.S. government suffered any damage assuming, *arguendo*, that Reagan's claims are true.

14.     Finally, this Court finds that there is no "reverse claim" pursuant to 31 U.S.C. § 3729(a)(7) because all of the Plaintiff's allegations involve reports made to Medicare in an effort to obtain government payment.   There is no evidence or allegation of any existing obligations by the East Texas Defendants to the government which the East Texas Defendants sought to avoid or decrease based on any of the acts or omissions alleged by Reagan.

15.     For all of the foregoing reasons, the East Texas Defendants' Motion for Summary Judgment is granted.  This Court will address the East Texas Defendants' claims for bad faith litigation and harassment against Relator separately.

Entered this _____ day of _____, 2002.


_____
United States District Judge
Vanessa D. Gilmore


DALLAS_1\3616169\2
20972-1 -